**In the Matter of C. B. DUNN, Debtor.**
**No. 13196.**

United States District Court
M. D. Georgia,
Macon Division.

Feb. 7, 1966.

638

Westmoreland & Patterson, Macon, Ga., for debtor.

BOOTLE, Chief Judge:

On June 10, 1965 the debtor, C. B. Dunn, filed a petition under § 622 of Chapter XIII of the Bankruptcy Act praying for an extension of time to pay his debts out of future earnings. A meeting of creditors was held on July 6, 1965 and when it developed, at the outset, that all of the debts in the present proceeding had been covered by a previous proceeding filed February 20, 1964 and dismissed March 16, 1965, for failure to pay, the Referee announced that he could not approve the plan. The Referee states in his certificate that the basis of his announcement was the knowledge of the previously dismissed proceeding.[1] At this point another hearing was scheduled for July 29, 1965 so that a reporter could be present and a formal record made which would enable the debtor to obtain a full review of the Referee's order in this court. The Referee's certificate shows that counsel for the debtor was advised that "the court would not be restricted to the facts of the hearing of July 6, 1965 in making the formal record but all facets of conditions to approval would be considered." At the termination of the hearing of July 6, 1965 the record did not show an acceptance by all the "affected" creditors of the debtor's proposed plan. Furthermore, no mention was made of "feasibility" at this meeting. The Referee's certificate also states that the hearing held on July 29, 1965 "was not a continued meeting but a holding of the first meeting anew to allow the debtor to make a formal record of a first meeting of creditors." The transcript of the July 29, 1965 meeting shows that at that time the Referee raised the question of feasibility as per § 656(a) (2) of the Bankruptcy Act and in his opinion, dictated from the bench, expressly based his refusal to confirm the debtor's plan on this point. At the July 29, 1965 hearing the record shows that all the "affected" creditors had accepted the debtor's proposed plan. The Referee took the position, however, that the July 29, 1965 hearing was limited to facts which existed on July 6, 1965 and that since all the "affected" creditors had not accepted the plan on that date the court was not bound by the fact that all creditors had accepted as of July 29, 1965.

The significance of the Referee's position is apparent when § 651 of the Bankruptcy Act is read. That section *requires* the Referee to confirm a plan which, at the meeting of creditors, has been accepted in writing by all creditors "affected" thereby "if the court is satisfied that the plan and its acceptance are in good faith and have not been made or procured by any means, promises or acts forbidden by this Act." When all "affected" creditors have accepted the proposed plan, the question of feasibility under § 656(a) (1) is, as a matter of law, not open to the Referee.

1. The record further shows that the debtor had a similar wage earner proceeding filed June 20, 1961 and dismissed on February 6, 1964 for failure to carry out the plan. The instant plan is therefore the debtor's third attempt to obtain relief under Chapter XIII of the Bankruptcy Act, he having filed the instant proceeding less than three months after dismissal of the second proceeding and having filed the second only fourteen days after the dismissal of the first. This wage earner thus appears to be somewhat addicted to the use of Chapter XIII. He explains the February 6, 1964 dismissal as follows: "At that time I resigned, and I didn't have enough money to live off of after I resigned to pay out everything, and then after I resigned I couldn't find no job, and that is the reason that one was dismissed." (Tr. p. 16).

■ It is the opinion of this court that, under the particular facts of this case, the hearing of July 29, 1965 was unduly limited by the Referee in that he took evidence on and inquired into a ground which was not raised at the July 6, 1965 hearing, while refusing to recognize the fact that on July 29, 1965 all allegedly "affected" creditors had accepted the proposed plan. The facts of this case are such that the July 29, 1965 hearing must be treated as having been a continuation of the meeting of creditors begun on July 6, 1965. With this in mind, it is clear that since the record reveals an acceptance by all the allegedly "affected" creditors on July 29, 1965 the Referee should have made his decision according to § 651 and not as per § 656(a) (2). At least the record was such as to preclude the question of feasibility as per § 656(a) (2).

■ A reversal and remand of the case is not necessary, however, since there exists another proper ground for dismissal. This court has the power to raise "any issue presented by the record, even though it was not discussed by or before the referee." 2 Collier, Bankruptcy, § 39.28 (1964).

Courts cannot afford to remain open forever with respect to the same proceeding. Res judicata is a firm and enduring principle. As stated in Cowan's Bankruptcy Law and Practice, § 234 "the effect of a second and third filing in bankruptcy presents a complex picture. To understand it requires consideration of the ancient reluctance of courts to relitigate the same matter repeatedly. This policy which finds expression in the doctrine of res judicata applies in bankruptcy proceedings relating to discharge."

■ It is well settled that a prior denial of a discharge in bankruptcy for whatever reason is res judicata as to debts scheduled in such prior proceedings, and it is as equally well settled that a mere failure to obtain a discharge in such prior proceeding for any reason, for instance because the prior proceeding was closed and dismissed before the granting of a discharge on account of bankrupt's failure to pay the costs he was by law required to pay, has the same res judicata effect. Nadler, Law of Debtor Relief, § 551 (1954); In re Bacon, 193 F. 34 (5th Cir. 1912); Peoples Loan and Savings Co. v. Dowdle, 92 F.2d 442 (5th Cir. 1937). When the application is dismissed for want of diligent prosecution this is said to be a judgment by default against the right to a discharge. 1 Collier, Bankruptcy, § 14.62 (1964).

Remington on Bankruptcy, Vol. 7, 1955 edition, § 3009 states the rule as follows:

"Generally speaking, once a discharge in bankruptcy has been either expressly denied, or the debtor, having been adjudicated bankrupt, has failed to obtain a discharge in the pending proceeding from debts then and there provable, he has lost his right to a discharge from such debts and cannot obtain one by subsequent application in the same proceeding, or by subsequent bankruptcy proceedings. Although § 14(a) of the Act, since 1938 amendment, places no time limit or (sic) obtaining a discharge, as far as individual bankrupts are concerned, and, in fact, does not even require them to make application for discharge, it is still held that, normally, they are entitled to but the one opportunity to be freed from their obligations. If they fail in that attempt, creditors whose rights are involved in it are entitled to set up the failure as leaving them free to enforce such rights without further harassment. Under former provisions requiring the bankrupt to apply for discharge within a specific time, this was the settled rule if he was adjudicated and failed to make proper and timely application for discharge, or withdrew his application and let the time elapse. A 'denial' of discharge resulted in either case, whether or not it was specifically so stated, and, in fact, unless the court's record specifically showed otherwise. Such 'denial' was res judicata. A subsequent attempt to obtain a discharge from the

particular debts was merely vexatious and useless repetition. * * * According to some decisions, a subsequent bankruptcy petition is subject to dismissal where discharge from the same debts has been denied in a prior bankruptcy. * * * One reason for this rule is that the debtor has had the advantage of keeping his creditors from enforcing their claims while the proceedings were pending, and, if he could simply go in and out of bankruptcy at will, could stall them off indefinitely."

■ ■ Remington's statement that a subsequent bankruptcy petition is subject to dismissal where a discharge from the same debts has been denied in a prior proceeding is amply supported by the authorities the author cites, namely, Kuntz v. Young, 131 F. 719 (8th Cir. 1904), (where the discharge was not denied but simply not applied for); In re Elby, 157 F. 935 (D.C.Iowa 1907), (also a mere failure to apply for a discharge); In re Schwartz, 248 F. 841 (D.C.Ohio 1918), (where bankrupt applied for discharge, withdrew his application and failed to reapply). See also In re Buchanan, 62 F.Supp. 964 (D.C.Va.1945). The case of In re Frey, 95 F.Supp. 1007 (D.C.N.Y., S.D.1951), held that a bankrupt who failed to apply for a discharge in his first proceeding "is effectively barred from filing a second petition listing the debts included in the first."

The philosophy of this res judicata principle is set forth in the case of In re Brown, 35 F.Supp. 619 (D.C.N.H.1940) where District Judge Morris quotes from District Judge Gore as follows:

" 'The bankrupt stood by and failed to prosecute his case, was cited to appear in court, paid no attention to same, and permitted his case to be dismissed for the nonpayment of costs. This is against the policy, equity and spirit of the bankruptcy law. "(sic) Bankruptcy is a special dispensation and gives freedom from debts when properly applied for and pursued under the proper rules and law, and when one comes into court asking this favor he should obey all rules, orders, and where one stands by and fails to pay costs, after being cited, as was done in this cause and allows his cause to be dismissed, he is bound by same and the rule of res adjudicata as to the former case applies and may be invoked by any creditor scheduled under the former petition when same is rescheduled under a later petition.

" 'If this rule were not adopted and enforced, bankrupts would abuse this court and allow their petitions to elapse for non-payment of costs and refile same, and make this court a perpetual paymaster, which is in conflict with all good conscience, equity and the bankruptcy law.' " (At page 621)

It has been held that a bankrupt "abused the process of the court", In re Seiden, 174 F.2d 586, 587 (2d Cir. 1949), and is to be "regarded as imposing upon the court as well as the creditor", Harris v. Warshawsky, 184 F.2d 660, 662 (2d Cir. 1950), in applying for and obtaining a discharge with respect to a debt barred by this res judicata principle.

■ ■ There appears no reason why res judicata should not apply in wage earner proceedings as well as in straight bankruptcy. Nadler's, The Law of Debtor Relief, § 551 (1954) so implies in the following language:

"It would therefore seem that where the subsequent proceeding is in the form of a plan involving only creditors who came into existence after the filing of the prior proceeding, the denial for whatever reason of a discharge in such prior proceeding will not be a bar to the confirmation of a subsequent Wage Earner's plan that affects only such 'new' creditors. Even as to old creditors, it would seem that where the Wage Earner proceedings are not in the same court, a denial of a discharge in the prior proceeding will not bar confirmation of the plan in the absence of affirmative objection thereto on that ground by such an 'old' creditor."

And of course where all proceedings are in the same court that court can take judicial cognizance of its own records and act *ex mero motu*. See Freshman v. Atkins, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925) where the Court quoted approvingly from In re Fiegenbaum, 121 F. 69 (2d Cir. 1903) as follows: "Not only should the court of bankruptcy protect the creditors from an attempt to re-try an issue already tried and determined between the same parties, but the court, for its own protection, should arrest, in limine, so flagrant an attempt to circumvent its decrees." This court holds that a debtor is barred by the principle of res judicata from listing debts in a Chapter XIII proceeding which were listed in a previously dismissed proceeding, in which a discharge of such debts was either denied or not obtained, and that where the latest proceeding lists only such previously listed debts, such proceeding should be dismissed. If this be not the law then the Referee is merely marking time and flailing the air in confirming a plan, ordering the wage earner to pay in accordance therewith and dismissing the proceeding for his failure to do so. If we assume that the present proceeding must go on, the result would be that it too could be dismissed for failure to pay, the order of dismissal treated by the wage earner as a nullity, and a fourth proceeding filed, and so on ad infinitum. See In re Fiegenbaum, 121 F. 69 (2d Cir. 1903). The Bankruptcy Court under Chapter XIII is not just a haven for the spendthrift, not just a place of refuge for the unemployed. It is more like a rehabilitation center for the wage earner who has the ability plus the desire to pay his debts if reasonable terms can be obtained. If the Referee cannot effectively dismiss for failure to pay he is impotent in his desire to rehabilitate the wage earner by reminding him of the realities of life including the sanctity of obligations.[2]

■■■ It is now necessary to deal with § 651 of the Act since that section clearly states that the plan should be confirmed if all "creditors affected thereby" have accepted and since the record in this case shows an acceptance in writing from all creditors listed in the proposed plan. Section 651 must be construed, however, in conjunction with § 607 and with the above discussed principle of res judicata in mind. Section 607 defines an "affected creditor" as follows:

"A creditor shall be deemed to be 'affected' by a plan only if his interest shall be materially and adversely affected thereby. In the event of controversy, the court shall, after hearing upon notice, summarily determine whether any creditor is so affected."

The crucial question is obvious: Is the interest of any accepting creditor in this case "materially and adversely" affected by the proposed plan? The answer must be "No". Since all these creditors were listed in the debtor's previously dismissed plan, he is barred by res judicata from again listing them in a plan. His listing of them in this case is entirely ineffectual and even though the creditors have accepted, no debts are put before the Bankruptcy Court which it can treat as the basis for a wage earner's plan. The listed creditors are simply not "affected" by the plan since the listing of their names even in conjunction with their acceptance of the proposed plan gave rise to no proceeding cognizable under Chapter XIII. See 10 Collier, Bankruptcy, § 22.10 (1965).

When this case is viewed in the above posture it is seen that even though the state of the record was such as to relegate the Referee to § 651 to make his ruling, still when § 651 is applied to the instant case it is of no effect. This is so because there are no "affected" creditors to accept and thereby compel the court to confirm the proposed plan. Certainly, the court cannot be forced to administer a plan where there are no creditors with proper debts before the court. If all the creditors remain cooperative and willing to accept the amounts specified under

---

**2.** It is significant that no review of either of the orders of dismissal of the two pre- viously confirmed plans was sought. Presumptively, they were correct.

the proposed plan there is no reason why such an arrangement cannot be handled among all interested parties without the aid of the Bankruptcy Court.

The debtor's Chapter XIII proceeding must therefore be dismissed and the decision of the Referee affirmed on the grounds specified in this order.