**In the Matter of Curtis HARDY, Debtor.**

**No. 36616.**

United States District Court
S. D. Ohio, W. D.

Aug. 1, 1967.

Harry Falk, Cincinnati, Ohio, for debtor.

Young & Young, Cincinnati, Ohio, for creditor.

## MEMORANDUM OPINION

PORTER, District Judge.

The Referee has certified for review his order denying the debtor's application to convert the Chapter XIII Wage Earner Extension Plan into straight bankruptcy, 11 U.S.C.A., § 11(a) (10).

The application by the debtor was made within three years from the time he filed his petition under Chapter XIII but more than six years from the time he filed his last petition in straight bankruptcy. The debtor filed that petition in straight bankruptcy May 28, 1960 and was discharged of all his outstanding debts July 18, 1961.

Some 27 months later the debtor filed under Chapter XIII (11 U.S.C.A. § 1022) for the approval of a plan to pay the debts listed in the petition over a period of time. This *extension* plan was approved November 1963. The record does not show the manner in which the debtor discharged his obligation under the plan, but a comparison of the petition under XIII and the schedules attached to the petition to convert disclose about half of the debts listed in the schedules attached to debtor's XIII petition were paid.

As we view it, the question presented may be variously stated. Most broadly it is, can a debtor voluntarily drop out of a XIII, or is the order approving his extension plan *res adjudicata* as to the debts listed in his petition? In other words, once a wage earner's extension plan under XIII has been approved, are the powers of the Court broad enough to grant adjudication, or is the relief the debtor may obtain limited to that available under § 661? All of this assumes that there has been no showing of an abuse of the process. We hold that the debtor can voluntarily drop out, and we do so on the authority of Rice v. Mimms, 291 F.2d 823 (10 Cir., 1961).

In *Mimms* the Court was concerned with a wage earner plan in which a trustee was appointed and in which the debtor, as in this case, petitioned seeking a general adjudication in bankruptcy. The facts are not all recited, but it is apparent that the order granting a general adjudication in bankruptcy was made within three years after confirmation of the extension plan (see page 826). The trustee appealed the Referee's decision which granted the adjudication, raising the same questions as those before this Court, namely, whether Congress intended to limit the Court's power to act with respect to a Chapter XIII plan for a period of three years, subsequent to its inception.

*Mimms* holds:

" * * * the powers of the court in a Chapter XIII proceeding extend to the adjudication of bankruptcy where it becomes apparent that solutions attempted under the usual procedures are destined to failure and that it lies within the discretion of the Bankruptcy Court to grant complete relief. * * * " (Page 826).

The appellant in *Mimms* asserted that when a debtor elects to submit a plan to his creditors under Chapter XIII of the Bankruptcy Act, relief from the obligations of the plan is not available except as the Court may order under § 646(5) or the discharge provisions of §§ 660 and 661.

The Court held the order adjudicating general bankruptcy was not forbidden by § 668 of the Bankruptcy Act, holding:

" * * * Section 668 is in essence the protection of the jurisdiction of the court first taking cognizance of the debtor's financial plight under a Chapter XIII plan. It gives the debtor a limited exemption from adjudication to permit him to work out a plan whereby he can avoid bankruptcy. See 9 Collier on Bankruptcy, 14th Ed., § 30.03, p. 716." (Pages 825–826.)

As to § 666, the Court said:

"Since the debtor has not yet defaulted in the provisions of the ar-

rangement, appellant asserts that the remedy of an adjudication in bankruptcy under Section 666 is not available to him. As relevant here, Section 666 provides for certain failures of a plan prior to confirmation 'or if after confirmation a debtor defaults in any of the terms of the plan, or if the plan terminates by reason of the happening of a condition specified in the plan, the court shall * * * (2) where the petition has been filed under section 1022 of this title, enter an order dismissing the proceeding under this chapter or, with the consent of the debtor, adjudging him a bankrupt and directing that bankruptcy be proceeded with pursuant to the provisions of this title.'

"The debtor here scheduled the early debts of the plan and a new obligation * * * and stated under oath that he was unable to meet his debts as they mature. [This case.] Thus the question becomes whether the court is empowered to consider the debtor's unwillingness to continue with the plan, together with the difficulties of his situation, as a default or imminent default sufficient to permit an adjudication in bankruptcy." (Page 825.)

Before reaching the conclusion noted at the outset of the discussion of the *Mimms* case, the Court stated:

"Considering the broad powers granted the court in the supervision of a Chapter XIII proceeding, only an overly technical reliance upon the language of the various sections would permit the conclusion that Congress intended to limit the court's power to act with respect to a Chapter XIII plan for a period of three years subsequent to its inception, particularly where it becomes obvious that neither the creditors nor the debtor can succeed in obtaining the relief intended by the plan. Indeed, the language of Section 612, 11 U.S.C.A. § 1012, indicates a contrary construction:

"'Where not inconsistent with the provisions of this chapter, the juris-

diction, powers, and duties of the court shall be the same—

"'(1) where a petition is filed under section 1021 of this title and a decree of adjudication has not been entered in the pending bankruptcy proceeding, as if a decree of adjudication had been entered in such bankruptcy proceeding at the time the petition under this chapter was filed, or

"'(2) where a petition is filed under section 1022 of this title, as if a voluntary petition for adjudication in bankruptcy had been filed and a decree of adjudication had been entered at the time the petition under this chapter was filed.'"

Earlier, at page 824, the Court noted that a wage earner proceeding could not and did not take away from the debtor the right to invoke voluntary bankruptcy proceedings, because:

"'* * * an arrangement entered into binding a debtor's future earnings, beyond the time of his willingness to have them applied, is contrary to the spirit and letter of the bankruptcy law. Such an arrangement does not promote, it defeats, the purposes for which section 74 and the other bankruptcy statutes were enacted.' McKeever v. Local Finance Co., 5 Cir., 80 F.2d 449, 452.

"See also In re Edwards, D.C.S.D.Cal., 73 F.Supp. 310. Such an interpretation does not render the words of Section 657 without meaning, for it is clear that the intention of the statute was to render the confirmed agreement immune from collateral attack or the retraction of money or property submitted to the settlement. * * * *"

■ Thus it is clear that if there is no prior discharge in the factual matrix, the Court's powers in a Chapter XIII proceeding "extend to the adjudication of a bankruptcy" under § 666 of the Act (11 U.S.C.A. § 1066), regardless of whether or not three years have elapsed

since the filing of the petition. We recognize that in the instant case the debtor was discharged within six years from the time he filed under Chapter XIII, but conclude that after the six-year bar is lifted, this is a distinction without a difference and the case therefore comes within the scope of *Mimms*.

The Referee took no note of *Mimms* and made his point of departure Perry v. Commerce Loan Co., 383 U.S. 392, 86 S.Ct. 852, 15 L.Ed.2d 827 (March 7, 1966), which held that an extension plan (filed within six years of the date of filing of the last petition in bankruptcy in which the debtor had been granted a discharge) under Chapter XIII was not barred by § 14(c) (5) of the Bankruptcy Act.

■ Of course, as noted in *Perry*, since they are akin to bankruptcies, compositions are barred by § 14(c) (5) (page 403, 86 S.Ct. 852, citing In re Jensen, 200 F.2d 58 (7 Cir., 1952), cert. den. Jensen v. Peoples Finance Co., 345 U.S. 926, 73 S.Ct. 785, 97 L.Ed. 1357 (1953), but see, In re Goldberg, 53 F.2d 454, 80 A.L.R. 399 (1931)). The Referee analogized, "If the debts listed in an extension plan are not subject to a subject's subsequent discharge under § 661, they should not be subject to being discharged by converting proceedings to bankruptcy for the purpose of receiving a discharge from the same debts."

The Referee concluded that under *Perry* the "debts included in the debtor's wage earner plan are *res adjudicata* and not *dischargeable*. This does not, however, mean that the debtor is denied the right to file straight bankruptcy after the six-year limitation period has expired and be discharged from debts which were not included in the plan." (Emphasis added.)

Apparently the Referee concluded that a result opposite from that reached herein is required by the following from *Perry*:

"A request for relief under § 661 would, in effect, constitute an attempt to transpose an extension plan into a composition, and a grant of relief thereunder would, *at that time,* be tantamount to a confirmation of a composition. The six-year bar would, therefore, be operative in such a situation." (Page 404, 86 S.Ct. page 859.) (Emphasis added.)

We do not interpret this *dictum* as requiring a denial for a request for relief under § 666, if at the time of the request six years has elapsed since the last discharge in bankruptcy. Neither do we interpret the *dictum* about there being no escape hatch for debtors in an extension plan (page 39) as requiring a denial. We believe the reference to "no escape hatch" means there is no way a debtor can jump from a Chapter XIII to straight bankruptcy if, within six years, he has obtained a discharge in bankruptcy.

The sections of the Bankruptcy Act which are involved are §§ 14(c) (5), 612, 661, 666, 667, 668, and 669. It is not deemed necessary to set them forth in this decision or to repeat any of the discussion of them contained in *Mimms*, supra.

However, in *Mimms* the six-year bar was not involved, and there was, therefore, no problem of relation back under § 667. That section provides:

" * * * if an order has been entered adjudging the debtor a bankrupt, as provided in paragraph (2) of section 1066 of this title, the proceeding shall thereafter be conducted *so far as possible,* in the same manner and with like effect as if a voluntary petition for adjudication in bankruptcy had been filed and a decree of adjudication had been entered on the day when the petition under this chapter was filed." (Emphasis added.)

■ Obviously, if the adjudication in the instant case has to relate back, it would be barred by the six-year limitation. The Court notes, however, the "so far as possible" and "as if" in the above section and construes this as not

requiring relation back to the time the petition under Chapter XIII was filed.

To have relation back would be contrary to the intent of Congress evident from section 669 (11 U.S.C.A. § 1069), wherein it is provided that upon an order in Chapter XIII bankruptcy be proceeded with—

"(2) the unsecured debts incurred by the debtor after the confirmation of the plan and before the date of the entry of the final order directing that bankruptcy be proceeded with, shall * * * share on a parity with the prior unsecured debts of the same classes, provable in the ensuing bankruptcy proceeding, and for such purpose the prior unsecured debts shall be deemed to be reduced to the amounts respectively provided for them in the plan or in the order confirming the plan, less any payment made thereunder; * * *"

Also, there was limited discussion in *Mimms* of § 661, which provides that no composition is possible until after three years from the confirmation of the extension plan. In § 666 of the Act there is no such limitation placed on the time in which the Court can either grant a dismissal or an adjudication if, after confirmation, "a debtor defaults in any of the terms of the plan, or if the plan terminates by reason of the happening of a condition specified in the plan * * *."

And, as noted in *Mimms*, § 612 of the Bankruptcy Act suggests that there was no congressional intent to limit the powers of the Bankruptcy Court to grant a request for an adjudication under 666 to three years. The same must be said of § 669 of the Act regarding the rights of creditors after an order directing that bankruptcy be proceeded with.

█ Some discussion of the purpose of Chapter XIII and § 14(c) (5) is in order. As to the purpose of Chapter XIII, it is in part to provide relief from harassment from creditors and serve as a federal counterpart to state systems such as that provided for in § 2329.70 Ohio Rev.Code, under which a debtor can forestall garnishment by entering into a trusteeship and paying for distribution to his creditors the amount of his wages over and above his exemptions. (See commentary on the Chandler Act, 11 U.S.C.A., at xxxix.)

As stated in In re Dunn, 251 F.Supp. 637 (M.D.Ga., 1966):

"The Bankruptcy Court under Chapter XIII is not just a haven for the spendthrift, not just a place of refuge for the unemployed. It is more like a rehabilitation center for the wage earner who has the ability plus the desire to pay his debts if reasonable terms can be obtained. * * *"

A purpose to aid creditors is also reflected in the statement of Justice Clark in *Perry,* supra (383 U.S. page 396, 86 S.Ct. 852, page 855) in which he indicated large sums of money are annually returned to creditors under extension plans, the current rate being well over $26 million annually. He stated:

"As wage earners ordinarily have little or no assets available for distribution in straight bankruptcy, these sums represent settlements which the debtors would otherwise be unable to effect and the creditors unable to obtain. * * *"

We do not believe the result reached herein will defeat the purpose to assist creditors as well as debtors by widespread use of Chapter XIII. Since proceedings of Chapter XIII are not bankruptcy in the usual sense (even though there is a composition), wage earners will still be able to avoid the stigma of bankruptcy by availing themselves of its provisions. And it must be remembered that those in Chapter XIII proceedings could have petitioned for straight bankruptcy in the first place. And, as noted in *Mimms,* supra, there is nothing in the Act which says one gives up this right to file bankruptcy when he enters a XIII. If a debtor decides to avail himself of this "right," who can say he could be "rehabilitated" by forcing him to stay in as to the debts

listed in the petition filed under Chapter XIII?

We find no merit in the contention that the allowance of the petition under § 666 would defeat the purpose of Chapter XIII by tending to make it a "haven" for the deadbeat. On the other hand, the purpose would be defeated by denying the petition, for fewer debtors would seek the relief it affords if one result would be to foreclose the right to take straight bankruptcy if the going got too rough.

Similarly, we believe the holding is consistent with the purpose of § 14(c) (5). As noted in *Perry*, supra, this section was designed to prevent "a class of habitual bankrupts—debtors who might repeatedly escape their obligations as frequently as they chose by going through repeated bankruptcy. See H.R.Rep. No. 1968, 57th Cong., 1st Sess. 2 (1902); In re Thompson, D.C., 51 F.Supp. 12, 13 (1943)." (Page 399, 86 S.Ct. page 856.) In *Perry*, at page 403, at page 859, the Court said:

"It is both logical and consistent with the underlying purposes of § 14(c) (5) that confirmation of wage-earner compositions be barred by prior bankruptcy, since repeated use of such plans would, in effect, provide an opportunity for abuse of the Act."

We conclude that the holding herein will not provide an opportunity for abuse of the Act by the stalling of creditors by some debtors in between bankruptcies. We reach this conclusion because Chapter XIII has built-in safeguards in that (1) a majority of the creditors have to approve any proposed extension plan; and (2) even after they do, the Court has to find it feasible (11 U.S.C.A. § 1051). Furthermore, the Bankruptcy Court has inherent power to prevent abuse of process. That is clear from *Perry*.

In the instant case, is the debtor "getting away with" something? We are not furnished with a finding as to the manner in which the debtor has performed his obligation under the extension plan.

However, as noted before, a comparison of the amounts shown as owing to the creditors listed in the schedules attached to the petition to convert to straight bankruptcy compared with the same schedule to the petition for an extension plan, indicates that about half of the debts were paid. To me it seems doubtful that the creditors would have received more via the garnishment route if they had not approved the plan and the Court had not found it feasible.

Generally, it is conceivable that creditors will be less willing to approve extension agreements, especially if the debtor has a prior discharge. In most instances, however, it would seem they have nothing to lose by giving such approval, except the right to garnishee the wages of the bankrupt or foreclose a lien. As to garnishment, it is an asset of questionable value since it frequently results in the loss of the wage earner's job, at least in creditor states such as Ohio.

As to the purpose of § 14(c) (5), the Court in In re Verlin, 148 F.Supp. 660 (E.D.N.Y., 1957), aff'd, Fishman v. Verlin, 2 Cir., 255 F.2d 682, went into this in depth in making the same distinction between compositions and extensions made in *Perry*, In re Holmes, 309 F.2d 748 (10 Cir., 1962) and In re Thompson, 51 F.Supp. 12 (W.D.Va., 1943), in speaking of the congressional intent behind the word "discharge" in § 14(c) (5). There is the following in the opinion of the lower court which was given warm approval on appeal:

"In the Thompson case, supra, 51 F. Supp. at page 13, the Court, in commenting on the distinction between extensions and composition, said: 'In the first place, there is no reason to believe that congress intended the "discharge" referred to in the present Sect. 14, sub. ″c(5), to be anything different from the "discharge in bankruptcy" referred to in the former Sect. 14, sub. b(5) or that the words "in bankruptcy" were omitted for any reason other than as surplusage. It is to be remembered that bar to a second

discharge in bankruptcy within six years had a definite and desirable purpose. It was to prevent the creation of a class of habitual bankrupts, to prevent debtors from going through bankruptcy and escaping payment of their debts whenever and as frequently as they chose. The provision was inserted in the law in 1903, when a proceeding solely for extension was unknown and when bankruptcy resulted, and was expected to result, in practically every case with the release of the debtor after satisfaction of a small percentage of his indebtedness. The reasons why a debtor should not be allowed to accomplish this result as frequently as he chooses have no application to the situation where the debtor offers to and does pay his debts in full.' "

As to *res adjudicata,* I can only conclude that the Referee meant to say his holding was under *Perry and* the doctrine of *res adjudicata.* In this connection the Court found of special help In re Dunn, 251 F.Supp. 637 (M.D.Ga., 1966). The holding of that case is that a debtor is barred by *res adjudicata* from listing debts in a Chapter XIII proceeding which were in a previously-dismissed proceeding in XIII, in which a discharge of debts was either denied or not obtained, and where the latest proceeding lists only such previously-listed debts. the Court saying that such proceeding should be dismissed.

It is not so much for the holding as for the discussion of *res adjudicata,* as applied to bankruptcy, that this opinion affords special help. Such discussion begins with the following:

"Courts cannot afford to remain open forever with respect to the same proceeding. Res judicata is a firm and enduring principle. As stated in Cowan's Bankruptcy Law and Practice, § 234 'the effect of a second and third filing in bankruptcy presents a complex picture. To understand it requires consideration of the ancient reluctance of courts to relitigate the same matter repeatedly. This policy

which finds expression in the doctrine of res judicata applies in bankruptcy proceedings relating to discharge.' "

The Court goes on to note that, "It is well settled that [not only] a prior denial of a discharge in bankruptcy for any reason is *res judicata* as to debts scheduled in such prior proceedings, * * * [but] mere failure to obtain a discharge in such prior proceeding for any reason, * * * " is similarly *res judicata* of the debts scheduled in such proceedings. This can be on account of the bankrupt's failure to pay costs. Also, the Court cited Nadler, Law of Debtor Relief, § 551 (1954); In re Bacon, 193 F. 34 (5 Cir., 1912); Peoples Loan and Savings Co. v. Dowdle, 92 F.2d 442 (5 Cir., 1937). The Court cited also 1 Collier, Bankruptcy, § 14.62 (1964), and quoted at length from Remington, Vol. 7, 1955 Ed., § 3009.

This needs to be read to be appreciated but is too lengthy to set out in full here. Suffice it to say that it holds the doctrine of *res adjudicata* in bankruptcy forbids petitioning for relief from a debt which was listed in an earlier petition which was abandoned, dismissed because the costs were not paid, or for failure to obey an order, as well as for the denial of a discharge. In other words, under this concept it is considered that there is a "denial" of a discharge if a petition is abandoned, dismissed for failure to pay costs, withdrawn, or dismissed for failure to obey an order.

It is more or less a situation of only allowing one bite of the cherry.

As the Court stated in *Dunn,* 251 F. Supp. at page 640:

"The philosophy of this res judicata principle is set forth in case of In re Brown, 35 F.Supp. 619 (D.C.N.H., 1940) * * * :

" ' "The bankrupt stood by and failed to prosecute his case, was cited to appear in court, paid no attention to same, and permitted his case to be dismissed for the nonpayment of costs. This is against the policy, equity and spirit of the bankruptcy

law. Bankruptcy is a special dispensation and gives freedom from debts when properly applied for and pursued under the proper rules and law, and when one comes into court asking this favor he should obey all rules, orders, and where one stands by and fails to pay costs, after being cited, as was done in this cause and allows his cause to be dismissed, he is bound by same and the rule of res adjudicata as to the former case applies and may be invoked by any creditor scheduled under the former petition when same is rescheduled under a later petition.

" ' "If this rule were not adopted and enforced, bankrupts would abuse this court and allow their petitions to elapse for non-payment of costs and refile same, and make this court a perpetual paymaster, which is in conflict with all good conscience, equity and the bankruptcy law." ' "

The Court, after citing other cases, concluded there was no reason why res adjudicata should not apply in wage earner proceedings, as well as straight bankruptcy.

There is nothing in the rule or the reason for the rule applying to the case before this Court. In such case the petitioner has not been "discharged" in any of the senses in which that term is used in the rule on *res adjudicata* in bankruptcy. The petition has not been dismissed for failure to obey an order or pay costs. Instead when his six years was up he petitioned to convert to straight bankruptcy.

The conclusion of the Court is that *res adjudicata* is not applicable and does not bar such a petition.

To summarize, we reverse and remand, with instructions to the Referee to exercise the discretion with which he is vested to dismiss or adjudicate under § 666 of the Act. As a guideline in the exercise of such discretion, the Court directs the Referee that, absent any showing of abuse of the process, the peti-

tion to convert should be taken as a default as in *Mimms*, supra, as a default is imminent, and the petition should be granted, but it is not to relate back to the time the debtor petitioned for approval of his extension plan.

Entry accordingly, with exceptions, etc.