**In the Matter of Walter Alexander COLE, Debtor.**

**Bankruptcy No. 79–50126.**

United States Bankruptcy Court, S. D. West Virginia.

April 4, 1980.

Larry E. Losch, Charlton Heights, W. Va., for debtor.

## MEMORANDUM OF OPINION

EDWIN F. FLOWERS, Bankruptcy Judge.

A creditor who was injured by the Debtor's personal assault objects to confirmation of a Plan filed by the Debtor under Chapter 13 of the new Bankruptcy Code.

The Debtor, whose only income at the time of filing was State unemployment benefits, proposes paying only one of his three creditors, the favored one being fully secured by a lien on a 1979 four-wheel drive pick-up truck.

The two unsecured creditors who would receive nothing under the Debtor's proposed plan are a landlord who is owed rent of $225.00 and the victim of an assault who holds a judgment against our Debtor for $5,768.53, plus interest. In a trial before the Honorable John A. Field, Jr., then United States District Judge, the court found that the Debtor struck this creditor in the mouth with a sawed-off shotgun, "causing a severe puncture laceration of his lip just below the area of his nose."[1] The court concluded that the assault "was unjustified and unprovoked."

The injured judgment creditor objects to confirmation of the Debtor's proposed plan upon two grounds: First, the Debtor, at the time of filing, did not have "regular income" as required by Section 109(e) of the Code (11 U.S.C. § 109(e)); Second, no provision is made for payment of the willful and malicious injury which would be excepted from discharge in a Chapter 7 liquidation (11 U.S.C. § 523(a)(6)).

The Debtor, whose entitlement to unemployment benefits expired shortly after he filed his Chapter 13 petition, claims he is now eligible under Section 109 as a self-employed person doing "odd jobs." He cites some carpentry work he did for his brother-in-law as well as his attorney and also claims an ability to earn income by "junkin'." He explains that the latter calling includes cutting apart old automobiles and selling the remains as scrap.

As to the failure of his Plan to provide payments to the tort creditor, the Debtor responds that the Code does not require payments under a Plan to all creditors. Moreover, he candidly advises that he chose relief under Chapter 13 rather than under Chapter 7 so that the tort debt would be discharged. He points out that Section 1328(a) excepts only alimony and child support from discharge in Chapter 13 and that the debt for a willful and malicious injury is excepted from discharge only if a debtor fails to make all the payments under his

---

1. *Dean v. Pettry*, No. 522 (S.D.W.Va. Sept. 5, 1969).

Plan and gets a "hardship" discharge under Section 1328(b) and (c).

Since he is not required to propose payments to all his creditors and since he intends to pay in full the one creditor provided for in his Plan, the Debtor insists that the debts to the tort creditor and the landlord will be discharged by force of Section 1328(a).

The Debtor further notes that the court is without discretion in the matter since Section 1325(a) mandates confirmation of a Plan if six conditions are met and he is not deficient as to any one of them.

## I

### ELIGIBILITY

The threshold question is, of course, the matter of the Debtor's eligibility for relief.

Section 109(e) provides:

Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 . . . may be a debtor under chapter 13 of this title.

Section 101(24) defines "individual with regular income" as follows:

"(I)ndividual with regular income" means individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stockholder or a commodity broker.

The Debtor was dependent upon State unemployment benefits as his only income at the time of filing. Whether such income by its nature is sufficiently "stable and regular" to maintain eligibility under Chapter 13 is moot inasmuch as benefits to the Debtor ceased shortly after he filed his petition.[2] Even if he was eligible at the time of filing, his prospective ability to carry out his Plan must be judged at the later time of confirmation. On the other hand, if he was not eligible by reason of unstable and irregular income at the time of filing, he is entitled to have that aspect of eligibility determined at a more favorable time after filing. To conclude otherwise would unnecessarily require a new filing by the Debtor with a second fee he could ill afford, simply to recognize as fact, the adequacy of income which the Court must ascertain for confirmation anyway. Section 1325(a)(6).

Only the amount of the petitioner's indebtedness is required by Section 109(e) to be determined "on the date of filing . . ." Thus, though the Debtor may have been ineligible by reason of inadequate or unstable income at the time of filing, he is entitled to have that aspect of his eligibility for relief determined as of the time when the issue is raised.

The question then is whether the Debtor has sufficiently stable and regular income from carpentry and "junkin'" to maintain his entitlement to file under Chapter 13.

At the confirmation hearing, the Debtor could relate neither gross nor net income figures from his "odd jobs." He was clear however that, for the two months since his unemployment benefits ended, his income had remained "about the same as my 'unemployment,' sometimes more, sometimes less." It had been established that four weeks of unemployment benefits amounted to $596.00. By affidavit filed with counsel's brief, the Debtor's income was revealed to be $550.00 in October, $735.00 in November and $690.00 in December.

Without question, Congress intended to expand the availability of Chapter 13 for debtor relief. The Judiciary Committee of the House of Representatives is exultant in its report which explains:

Many self-employed individuals, from the house painter and Maine worm-digger, to the barber or independent carpenter, will

---

2. No conclusion is reached on whether State unemployment benefits, even though stable in amount during entitlement, are sufficiently "regular" by definition to meet the test of Section 101(24). Unlike welfare grants or pension income, an unemployment beneficiary must qualify anew each week and his maximum entitlement at the outset is ordinarily limited to 26 weekly payments. W.Va.Code §§ 21A–6–3 and 10, (1979 Cum.Sup.)

be permitted to use chapter 13. . . . This expansion of eligibility will enable many to work out arrangements with their creditors rather than seeking straight bankruptcy liquidation. House Rep. No. 95–595, 95th Cong., 1st Sess. 119 (1977),[3] U.S.Code Cong. & Admin. News 1978, pp. 5787, 6080.

Under the new bankruptcy code, a petitioner need not be a wage earner to qualify for relief under Chapter 13. The test is no longer the nature of the income but rather its stability and regularity. The income of most petitioners will still be derived from wages but Congress has made clear its intent to expand the eligibility for this form of relief to include the self-employed, even certain non-employed persons, conditioned only on the regularity and stability of income to support a Chapter 13 Plan.

The three months' experience of the Debtor hardly demonstrates much in the way of regularity and stability of income but then, perhaps the peak season for a "Maine worm-digger" doesn't last much longer than that.

 The Debtor, Mr. Cole, was last employed as a mechanic in a coal mine. For the ten years prior to that he was a school bus driver. His skills are sufficient, his motivation is seemingly adequate and the opportunities are apparently available for Mr. Cole to earn some income from self-employment at odd jobs. A debtor so presenting himself is entitled to the benefit of any doubt on the issue of eligibility for Chapter 13 relief.

## II

### CONFIRMATION

Though the Debtor is eligible to seek relief under Chapter 13, whether his Plan which makes no distribution to unsecured creditors merits confirmation is another matter.

The Court cannot deny confirmation when six conditions are satisfied. Section 1325 provides:

(a) The court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;

(2) any fee, charge, or amount required . . . to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value . . . of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

The objecting creditor contends that confirmation is barred by the failure to propose payments on the otherwise nondischargeable debt for willful and malicious injuries. It is suggested that the plan thus fails to comply with other provisions of the Code, is not proposed in good faith and yields to this creditor less than he would receive in a Chapter 7 liquidation. Subparagraphs (1), (3) and (4) of Section 1325(a) are cited as being violated by these deficiencies.

---

**3.** See generally, Id., 5, 116–125, 426–432 and Senate Rep. No. 95–989, 95th Cong., 2d Sess. 3–4, 12–13, 24, 138–143, U.S.Code Cong. & Admin. News 1978, p. 5787.

First, it is argued that a plan must comply "with other applicable provisions of this title . . . ." Section 1325(a)(1); that another section of the title excepts willful tort debts from discharge, Section 523(a); and that the plan which attempts to discharge such a debt does not comply with an "applicable provision" of the title.

Section 523(a), by its terms, responds to this attack. It provides, in the portions relevant here:

A discharge under section . . . 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

■ Section 1328(b) applies where a debtor has not completed the payments under his plan. In that circumstance, the exceptions to a Chapter 7 discharge are applicable in a Chapter 13 case. Section 1328(c)(2).

Conversely, where a debtor completes his plan, a subsection (a) discharge (§ 1328(a)) is not excluded by Section 523(a) and we must conclude that the exceptions to discharge recited there are not applicable.

It is possible and perhaps even likely that the debtor may want to pay his nondischargeable debts under the protection of Chapter 13. If he succeeds, he will be discharged. Section 1328(a). If he does not succeed, the Section 523(a) debts will be excepted from the discharge. Section 1328(c)(2).

■ Thus, it is no violation of any provision of the Bankruptcy Code that an otherwise nondischargeable debt will be discharged in Chapter 13, it is a fulfillment of the Code. 5 *Collier on Bankruptcy,* ¶ 1328.-01(1)(c)(2), p. 1328–4 (15th ed. 1979); J. Lee, *Chapter 13 nee Chapter XIII,* 53 Am.Bankr. L.J. 303, 323.

Next, it is contended that the unsecured tort creditor will get less in the Chapter 13 case than he would in a Chapter 7 liquidation since, in the latter instance, the debt survives. The Chapter 13 plan provides no payment to this creditor but in a liquidation there would appear to be no assets available for distribution to this creditor either.

The test embodied in Section 1325(a)(4), commonly called the "best interest of creditors" test, is usually discussed in terms of what the creditors will "receive" under alternate circumstances. This accommodates the creditor's argument that the holder of a nondischargeable claim will "receive" a continuing right to collect after a chapter 7 liquidation whereas under the no payout Chapter 13 plan he will receive nothing. Since he will "receive" less in the Chapter 13 proceeding, the plan violates Section 1325(a)(4) and cannot be confirmed.

There is some support for this interpretation[4] but the statute does not speak in terms of what the creditor "receives." The subsection makes the comparison one of what "would be *paid* . . . ." (emphasis supplied). It is difficult to construe the continuing right to pursue the debtor as something "paid" in a Chapter 7 liquidation.

■ Consequently, the argument fails that the amount which would be "paid" in the Chapter 13 case (nothing) is less than what would be "paid" in a chapter 7 liquidation.

Finally, the good faith test must be dealt with and it is here that the Debtor is found deficient.

Section 1325(a) commands that the "court shall confirm a plan if— . . . (3) the plan has been proposed in good faith . . ."

■ Previously, this Court concluded that the "good faith" requirement of Chapter 13 was a matter of intention adequately consummated. *In re Cook,* 3 B.R. 480 (S.D.W.Va.1980). Although the debtor there proposed paying all that realis-

---

4. *See, Countryman,* Letter to the Editor, 85 Commer.L.J. 28 (1980); H.Rep. 95–595, 95th Cong., 1st Sess. 123–124 (1977).

tically was possible, his plan was found inadequate to meet the purposes Congress intended the Chapter to serve. On this objective evaluation, good faith was found lacking.

In the instant case, "good faith" is subjectively lacking.

 The Debtor only owes one debt of a significant amount. That debt is less than three-fourths of the acknowledged annual income of the Debtor and the debt is one which is nondischargeable in a liquidating bankruptcy. No gesture of satisfaction of that debt is offered by the Debtor's plan. The plan and the testimony of the Debtor, as well as his very fortunate freedom from debt, leave the Court with the inescapable impression that the Debtor will manage his financial affairs in such a way as to avoid responsibility for the injuries he has inflicted.

I don't perceive Chapter 13 as intended to provide assistance in that type of debtor relief. Since the plan has not been proposed in good faith, the Court is under no obligation to confirm it and confirmation will be denied.