**In re Charles J. BURNS and Mary Kathleen Burns, a/k/a Mary Kay Burns, Debtors.**

**Bankruptcy No. 80 B 02754 M.**

United States Bankruptcy Court, D. Colorado.

Sept. 30, 1980.

Thomas F. Farrell, Littleton, Colo., for debtors.

Garry Appel, Denver, Colo., for I.C.M. Mortgage Corp.

Robert R. Marshall, Jr., Denver, Colo., for General Elec. Credit Corp.

## MEMORANDUM OPINION AND ORDER

JOHN P. MOORE, Bankruptcy Judge:

THIS MATTER arises upon confirmation of the Debtors' Chapter 13 plan. One creditor, I.C.M. Mortgage Corporation (ICM) who holds a claim secured by a first deed of trust in the Debtors' home, has objected to confirmation on grounds including that the Debtors are not individuals with regular income as required by 11 U.S.C. § 109(e) and as defined by 11 U.S.C. § 101(24) and that the plan is not proposed in good faith.

The predicate for these contentions is a previously dismissed Chapter XIII case commenced under the Bankruptcy Act by these Debtors on July 12, 1979. That case was dismissed by this Court on May 1, 1980 because in the nine months between the date of confirmation and the date of dismissal, Debtors had made only two payments totalling $240.00, and they had sustained a deficiency in the amount of $840.00. On July 7, 1980, some five weeks after the dismissal of the original case, the instant case was filed.

ICM argues that the dismissal of the former case at a time when the Debtors' income was approximately the same as it is now, and when the payments under the plan were some $330.00 per month less than Debtors proposed under their present plan, suggests Debtors do not have sufficient income to make the proposed payments in this case. In an attempt to rebut this sug-

gestion, Mrs. Burns stated she and her husband were unable to make payments under the former plan because her husband lost his job and her earnings were consumed in supporting family needs.

Examination of the file in the former case [1] indicates at the time of filing (July 12, 1979), Mr. Burns was then employed by Globe Ticket Company, and that he had been so employed for seven months. The Chapter 13 Statement in the instant case discloses Mr. Burns worked for Globe for a total of eight months. The Chapter 13 Statement in the instant case also reveals that as of the date of filing (July 7, 1980) Mr. Burns had been working for Harry H. Post Company for six months.

Putting these facts together, it appears Mr. Burns lost his job one month after the first case was filed, but he regained employment about five months before that case was dismissed. Moreover, according to the Chapter 13 Statement in the instant case, Mr. and Mrs. Burns had a joint gross income of $24,832.00 for calendar year 1979. Again, according to disclosures in the former case, that income exceeded their income for 1978 by $3,300.00.

In addition, at the time of filing the instant case, Debtors were ten months in arrears in payment on the first deed of trust on their home and eight months in arrears on the second. Both payments had been included in their Chapter XIII budget in the former case; therefore, we can safely assume that for the duration of the Chapter XIII case, not more than one payment was made, if any, on the first deed of trust and not more than three payments were made on the second. Thus, from at least the fourth month after confirmation of the Chapter XIII plan, the Debtors' monthly expenditures would have been reduced to $754.00, according to their budget. Yet, disclosures in the instant case indicate that for at least the last five months during which they paid nothing to the Trustee, the Debtors had a monthly joint net income of approximately $1,500.00.[2] When these circumstances are analyzed, it is apparent Debtors should have had a fund of approximately $750.00 per month from which their $120.00 monthly payments could have been made to the Chapter XIII Trustee.

Examination of the former file and comparison with the present file discloses another disconcerting circumstance. Despite the fact the Chapter XIII Trustee made no payments to unsecured creditors, the schedule in the instant case disclose the omission of five unsecured creditors from the list of those creditors who had been scheduled in the previous case. At the time of filing of the original Chapter XIII petition, the Debtors were obligated to these creditors in the sum of $1,883.11. In the present case, in addition to the remaining creditors from the old case, there are five unsecured creditors with debts totaling $1,970.47 who were not scheduled in the former case.[3] In the absence of any other evidence, it is clearly presumable that these Debtors have paid some old unsecured creditors in full while leaving others to be treated under the plan. The Debtors now intend to pay these creditors only $1.00 each along with their newly acquired unsecured creditors.

One other observation must also be made, and that is Mrs. Burns' testimony does not square with the facts the Debtors have sworn to under oath in their petitions. While Mrs. Burns stated under cross examination the Debtors' failure to make payments in the former case was attributable to the loss of her husband's job, it is obvious Mr. Burns was working for five months before the former case was dismissed, and their joint income was not insubstantial. Indeed, it exceeded their income of the previous year when they were not under the protection of the Bankruptcy Act, and it

---

1. Judicial notice of the file was taken.

2. This conclusion is based upon the net monthly income reported in the Chapter 13 Statement less $500.00 per month recently added to Mr. Burns' income.

3. These figures do not include G.E.C.C. and Beneficial Finance who were previously scheduled as secured creditors.

appears sufficient to sustain all their obligations. Obviously, this dichotomy greatly diminishes Mrs. Burns' credibility, leaving the Court with inferences that can be drawn from the facts.

In my opinion, there are only two such inferences that can be drawn. Either the Debtors' necessary family expenses are actually higher than those reported in the Debtors' budget,[4] or they simply refused to make any legitimate attempt at payment under the former case. In either event, the result militates against confirmation.

If the first conclusion is drawn, it is clear the Debtors are not individuals with regular income within the meaning of 11 U.S.C. §§ 101(24) and 109(e). In order to meet the definition in § 101(24), individuals must have income sufficient to make payments under Chapter 13. If the Debtors' necessary family expenses other than payments on the first and second mortgages exceed the budget they have presented, as it might justifiably be presumed, they cannot make the proposed Chapter 13 payments of $450.00 per month. Hence, they are not individuals with regular income, by definition, and are thus not qualified Chapter 13 Debtors pursuant to § 109(e).

On the other hand, if they made a conscious decision not to comply with their duty to make payments, even though financially able to do so, and if, as it clearly appears, they have paid former unsecured creditors in full and are thus treating their remaining unsecured creditors inequitably, can it be said this plan is offered in good faith? I think not.

Such a determination cannot lightly be made. Yet, when Debtors abuse the provisions, the purposes, or the spirit of Chapter 13, bad faith is manifest. *In re Cloutier*, 3 B.R. 584 (Bkrtcy.1980). Here the Debtors have chosen which of their unsecured creditors they will honor by payment in full while they treat the rest to paltry recompense. Moreover, they appear to have done so under conditions that would indicate

they allowed the dismissal of a Chapter XIII case (in which *all* unsecured creditors would have been paid in full) with knowledge of the provisions of present Chapter 13, and with intent to avail themselves of those provisions to the detriment of those creditors whom they seek not to pay.[5] If that is not an abuse of the purpose of Chapter 13, I cannot conjure one. Confirmation of this plan must be denied; therefore, it is unnecessary to consider other issues raised by ICM. On the basis of these conclusions, it is

ORDERED that the confirmation of the Debtors' plan be and it is hereby denied, and pursuant to notice given by the Trustee, this case is hereby dismissed.

---

4. Their present budget is approximately the same as that of the dismissed case.

5. Compare: *General Motors Acceptance Corporation v. Ryals*, 3 B.R. 522, (Bkrtcy.1980).