**In re Robert C. and Madeline WILHELM, Debtors.**

**Bankruptcy No. 180–02270–21.**

United States Bankruptcy Court, E. D. New York.

Nov. 12, 1980.

---

Jules Teitelbaum, P. C., New York City, for debtors.

N. Michael Lo Russo, Queens Village, N. Y., for Federal Nat. Mortg. Ass'n.

Robert W. Tauber, Brooklyn, N. Y., Trustee in Bankruptcy.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Robert C. and Madeline Wilhelm are seeking confirmation of a Chapter 13 plan they have jointly filed.[1] Both the Federal National Mortgage Association ("Fanny Mae") and the Chapter 13 trustee question the ability of the debtors to make the payments called for by the plan. The trustee opposes confirmation.

Before the Court may confirm a Chapter 13 plan, it must determine, *inter alia*, that "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6).[2]

This proceeding, like many other Chapter 13 cases, was brought for the purpose of saving the principal residence of the debtors from sale under a judgment of foreclosure. The debtors are in default on two mortgages on their residence at 7 Dogwood Avenue, Malverne, New York. Nothing has been

[1.] This case was originally assigned to Chief Bankruptcy Judge Joseph V. Costa, and subsequent to his untimely death, was reassigned to the writer.

[2.] Section 1325(a) of the Bankruptcy Reform Act, 11 U.S.C. § 1325(a), provides:

"(a) The court shall confirm a plan if—

"(1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;

"(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

"(3) the plan has been proposed in good faith and not by any means forbidden by law;

"(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

"(5) with respect to each allowed secured claim provided for by the plan—

"(A) the holder of such claim has accepted the plan;

"(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

"(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

"(C) the debtor surrenders the property securing such claim to such holder; and

"(6) the debtor will be able to make all payments under the plan and to comply with the plan."

paid the first mortgagee, Fanny Mae, for principal, interest, or taxes since 1977. As of August 1, 1980, the arrearages on the mortgage totaled $26,334.33, which includes taxes and insurance paid by Fanny Mae of $14,233.60.

Fanny Mae has been successfully blocked from foreclosing on its security by the debtors' repeated resort to the protection of the bankruptcy laws. According to the attorney for Fanny Mae, three foreclosure sales have been stopped. The most recent, which was scheduled to take place on May 2, 1980 at 9:35 a. m., was stayed by the filing of the Chapter 13 petition in this Court one hour earlier, at 8:35 a. m. on May 2, 1980.[3] An earlier foreclosure proceeding was frustrated by the filing of a petition under Chapter XII of the Bankruptcy Act of 1898, dismissed on March 13, 1980 for lack of prosecution.

In addition to the monies owed Fanny Mae, the debtors are in default on a second mortgage covering their home, on which they have made no payments since June 1, 1978. As of August 2, 1980, the arrearages on that mortgage aggregated $10,311.08. Unsecured creditors are owed nearly $25,000.

Under the amended Chapter 13 plan filed on July 23, 1980, all arrearages under the two mortgages are to be cured over a five-year period through monthly payments to the Chapter 13 trustee. Including the trustee's commission, $671.64 will be paid each month. Unsecured creditors will receive their *pro rata* share of a single lump sum payment to the Chapter 13 trustee of 7.80. Special provision is made in the plan for the payment of unpaid taxes; they are to be met through an additional payment to the

trustee of at least $50 a month until they are satisfied.

To fund the plan and to cover the debtor's living expenses, as shown in their budget, will require an income of at least $40,548 per year.[4]

Until sometime in 1979, both debtors were employed by Wil–Mad Westbury, Inc. ("Wil–Mad"), of which they owned all the stock and were the sole officers and directors. That corporation, which was engaged in the business of cabinet making, is now in bankruptcy.

At the present time, Mrs. Wilhelm is stated to be employed as a legal secretary; her estimated future monthly income is said to be $1,040 per month.

Sometime subsequent to the bankruptcy of Wil–Mad, Mr. Wilhelm went into the business of cabinet making as an individual entrepreneur, operating from rented space. Originally, he rented space at a locale in Brooklyn, New York, then moved to 5. Grand Street in Baldwin, New York. The debtors' Chapter 13 Statement placed Mr. Wilhelm's estimated income from this business at about $350 a week, or $1,485 per month, noting:

> "It is impossible to presently estimate husband's earnings as he has recently engaged in an attempt to manufacture custom–made cabinetry."

When, during the course of the hearings on confirmation, a question arose as to the feasibility of the plan, in the light of the debtor's income, an amended budget was filed showing the following estimated future income for Mr. Wilhelm:

| | |
|---|---|
| Cabinet making | $1,485.00 |
| Drafting | 650.00 |
| Sales [5] | 215.00 |

---

**3.** 11 U.S.C. § 362(a)(5) automatically stays on the filing of a petition under the bankruptcy laws "any act to create, perfect or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case * * *."

11 U.S.C. § 362(a)(2) automatically stays "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title."

**4.** According to the statement pursuant to Rule 219(b) filed with the debtors' petition, the debt-

ors agreed to pay their attorneys a minimum of $1,060 for services rendered in connection with the Chapter 13 proceeding. The source of this payment "will be earnings, wages and compensation." Neither the debtors' plan, nor their budget, however, provides for payment of these attorneys' fees.

**5.** According to the attorney for the debtors, the debtors do some business on weekends at a local flea market, and this figure may refer to their income from this source.

At the hearing on August 27, 1980, Mr. Wilhelm testified to still a fourth type of income. He intended, he said, to go to work full–time for a salary of $400 per week. Despite the fact that he would be working for this new employer 37½ hours per week, he expected to be able to devote the same number of hours he had previously to his freelance cabinet making, 15 or 20 hours per week, and to his drafting work, which had also been taking from 15 to 20 hours per week.

Mr. Wilhelm was unable to advise the Court at the confirmation hearing as to how much he had been grossing as a cabinet maker, or what his expenses were. As a result, he was directed to supply to the Court no later than September 15, 1980 a written statement "as to what his earnings had been for the last five months out of 5 Grand Street or wherever it is he has been operating." That statement has never been forthcoming.

The debtors were also instructed to supply the Court no later than September 15, 1980 with a sworn statement regarding their income for the last three years. No tax return had ever been filed by them with the Internal Revenue Service respecting these years.

On September 15, 1980, there was filed with the Court copies of income tax forms for the years 1977, 1978, and 1979. These are not signed by the debtors. The only signature they bear is that of the "Preparer," who, under the form, certifies to no more than that the form "is based on all information of which Preparer has any knowledge."

According to these statements, the total income of both debtors from all sources was $5,000 in 1977, $6,075 in 1978, and $5,000 in 1979.

■ To apply for and to qualify for relief under Chapter 13, a debtor must have a regular and stable income equal to the demands of his plan. 11 U.S.C. § 109(e) limits eligibility for filing under Chapter 13 to "an individual with regular income." 11 U.S.C. § 101(24) defines an "individual with regular income" as an individual "whose income is sufficiently stable and regular to enable such individual to make payments under a plan under Chapter 13 of this Title." And, as noted earlier, before a court can confirm a plan, it must find that the debtor will be able to make all the payments called for by the plan.

■ The income need not be derived from wages. In re Cole, 3 B.R. 346, 6 B.C.D. 216, 217–18 (Bkrtcy.Ct.S.D.W.Va. 1980). To quote the authoritative report of the Judiciary Committee of the House of Representatives:

"Many self–employed individuals, from the house painter and Maine worm–digger, to the barber or independent carpenter, will be permitted to use chapter 13 . . . This expansion of eligibility will enable many to work out arrangements with their creditors rather than seeking straight bankruptcy liquidation." H.R. No. 95–595, 95th Cong., 1st Sess. 119 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6079.

■ But whatever the source of the income, it must be "sufficiently stable and regular * * * to make payments under a plan." This requirement has been held to be jurisdictional. In re Mozer, 1 B.R. 350 (Bkrtcy.Ct.D.Col.1979); In re Burns, 6 B.R. 286, 6 B.C.D. 980 (Bkrtcy.Ct.D.Col.1980). Thus, where a debtor fails to produce evidence of the existence of a regular income, he does not qualify for Chapter 13 relief under 11 U.S.C. § 109(e). In re Mozer, supra. Equally fatal to qualifying is an income which is inadequate to cover the debtor's family expenses, and also to satisfy the plan. In re Burns, supra. In either event, the case can be converted "for cause" to a case under Chapter 7, pursuant to 11 U.S.C. § 1307(c), when requested by a party in interest, or dismissed. In re Mozer, supra; In re Burns, supra. The debtor seeking relief under Chapter 13 "must demonstrate that he will have income to make the payments under the plan. * * * There must be some factual basis for the court to determine the regularity and stability of the debtor's income." In re Mozer, supra.

That factual basis is totally lacking here. No evidence of any value has been furnished regarding Mr. Wilhelm's current income from any source, from cabinet making, drafting, flea market sales, or paid employment. His own testimony is entitled to no credence; it was evasive and incomplete.

Respecting Mr. Wilhelm's claimed income of $1,485 per month from cabinet making, his own Chapter 13 Statement admits that "[i]t is impossible to presently estimate husband's earnings * * *." Pressed on the witness stand when Mr. Wilhelm had been operating for at least five months as to how much he had been grossing each week, he answered: "It varies. It's hard to say exactly how much I gross each week." The written statement as to earnings from this cabinet making business requested by the Court has never been furnished.

As against the vacuum in the record respecting current earnings are the purported income tax returns showing that in each of the last three years, the total income of the debtors from a business engaged in cabinet making was $5,000 in two years, and $6,075 in the third. What basis is there for believing that Mr. Wilhelm, who earned only between $400 to $500 a month from the business of cabinet making when carried on in corporate form is now going to earn $1,485 a month as an individual proprietor engaged in cabinet making?

■ Moreover, it should be noted that the claim is that he will be able to earn this amount while working full–time elsewhere. Adding all the hours Mr. Wilhelm would need to produce the income required to fund the plan over the next five years yields a workweek of between 67½ hours and 77½ hours. Apart from all the other weaknesses of the evidence respecting the debtors' current income, no plan that assumes that the debtors will work for five months, or five years, ten hours a day, seven days a week, is viable.

The Court cannot find on this record that the debtors, who had a total income of less than $7,000 in 1977, 1978, and 1979, will be able to carry out a plan that requires a minimum income of $40,000 for the next five years.

■ Because it is so clear that the debtors cannot satisfy the threshold requirement for Chapter 13 relief, i. e., the demonstration of an income sufficiently stable and regular to meet their payments under the plan, it is unnecessary to explore whether the plan is feasible in the light of 11 U.S.C. § 1322(a)(2), which requires provision in the plan for full payment of all priority claims.[6]

Similarly, it is unnecessary to reach the question whether the plan could, in any event, be confirmed in view of the requirement that it first be found to have been filed in "good faith." 11 U.S.C.

---

**6.** In the Chapter 13 Statement, the Wilhelms acknowledged owing unpaid taxes of an indeterminate amount to the IRS and to the New York State Department of Taxation for "unpaid withholding and Social Security taxes incurred by Wil–Mad Westbury, Inc." These are priority debts. 11 U.S.C. § 507. The amended plan filed on July 22, 1980 provides for the payment of whatever taxes are due through the trustee at the rate of at least $50 per month. But the budget, which forms part of the July 22, 1980 filing, shows that after deducting from the debtors' expected income their living expenses and the payments required to be made under the plan, there is a surplus of only $11 per month, which is not enough to fund payments of $50 per month. In short, the plan on its face is not feasible if $50 a month is needed to pay taxes.

The debtors' attorneys have sought to minimize the significance of this fact by asserting that as yet, the Federal and state tax authorities have filed no claims in the Wil–Mad bankruptcy, and, therefore, the debtors, who are only secondarily liable for such taxes, may never be called on to pay them. After putting these facts before the Court, the debtors' counsel stated: "The only other way of going about it would be to contact IRS. Why raise a red flag and make the burden of these debtors any more difficult than it may be. We know of no tax liability which would be imposed upon them because there is no claim being asserted against them at the present time." Repeated requests by the Court that evidence be supplied that Wil–Mad, in fact, paid the Social Security taxes due on its employees has repeatedly been ignored by the debtors. Before this Court would confirm this plan, it would require clarification of the exact potential liability of the debtors for the unpaid taxes of Wil–Mad, however reluctant the debtors might be to "raise a red flag" and awaken the sleeping IRS.

§ 1325(a)(3). The payments to be made to unsecured creditors are very close to zero; on over $24,000 in unsecured debts, the Wilhelms propose to pay $200 in all. Confirmation has been denied plans of this character on the ground that Congress never intended Chapter 13 to be used as a device for paying a "mere pittance" to unsecured creditors. *See, e. g., In re Hurd,* 4 B.R. 551 (Bkrtcy.Ct. W.D.Mich.1980). Thus, if there was evidence that the debtors had a regular and stable income capable of supporting a plan requiring $40,000 a year, confirmation might still be denied for lack of "good faith."

### CONCLUSIONS OF LAW

Mr. and Mrs. Wilhelm do not qualify for relief under Chapter 13 because they cannot satisfy the requirements of § 109(e). They lack an income which is sufficiently stable and regular to enable them to make payments under their plan.

Their plan cannot be confirmed because the Court is unable to find that they will be able to make all payments under the plan and to comply with the plan.

No additional time will be allowed for filing another plan or for modification of the plan because the debtors lack the income to qualify for, and carry out, a plan under Chapter 13.

Since this Chapter 13 case cannot proceed, a hearing will be scheduled in the immediate future to determine if this case should be dismissed or converted to Chapter 7.

An Order consistent with this Opinion is being issued simultaneously herein.