**In re Michael Austin OVERSTREET, Debtor.**

**Bankruptcy No. 582–00624–S.**

United States Bankruptcy Court,
W. D. Louisiana,
Shreveport Division.

Oct. 15, 1982.

Joseph A. Cannatella, Shreveport, La., for debtor.

Donald L. Baker, Skeels, Baker, Coleman & Strickland, Shreveport, La., for General Motors Acceptance Corp.

## FINDINGS OF FACT

LeROY SMALLENBERGER, Bankruptcy Judge.

Michael Austin Overstreet, debtor herein, filed for bankruptcy under Chapter 13 of Title 11 of the United States Code. The plan of reorganization was submitted to this court and the hearing on confirmation was held on June 18, 1982. At that hearing the sole creditor of this debtor, General Motors Acceptance Corporation (GMAC), objected to confirmation. GMAC rejected the plan for three reasons: (1) the only source of income for the debtor is his unemployment compensation which is not regular and stable income; (2) the plan was not formulated in good faith; and, (3) the proposed plan does not allow interest for the use of the creditor's money while payments are made in monthly installments.

Mr. Overstreet proposes that GMAC retain the security interest it holds in the debtor's 1981 Cutlass Supreme purchased with the borrowed funds. The total principal amount owed to GMAC is Eight Thousand Four Hundred Forty-five Dollars and Eighty-four Cents ($8,445.84). Payments are to made over a Thirty-six (36) month period at Three Hundred Two Dollars and Six Cents ($302.06) per month. Of each monthly payment GMAC is to receive Two Hundred Thirty-four Dollars and Sixty Cents ($234.60). In total GMAC will be paid Eight Thousand Four Hundred Forty-five Dollars and Eighty-four Cents ($8,445.84).

As GMAC has rejected the plan, Mr. Overstreet has invoked the "cram-down" provisions of the Code.

## CONCLUSIONS OF LAW

To be eligible for Chapter 13 relief, the debtor must be an "individual with regular income". 11 U.S.C. § 109(e). His income must be "sufficiently stable and regular to enable such individual to make payments" on the plan. 11 U.S.C. § 101(24). Acceptable incomes include "welfare payments, social security payments, fixed pension incomes, or investment incomes which will enable the individual to work out a reasonable plan of repayment, rather than being forced into a Chapter 7 liquidation proceeding". 2 Collier on Bankruptcy ¶ 101.24, at 101–38 (15th Ed. 1982).

Unemployment benefits are of limited duration. After a certain period of time the benefits are terminated. It was planned that the benefits would see the jobless through that time until further employment was secured. Thus, the worker would not see a time of absolutely no income. The debtor may be entitled to the benefit of the doubt on the issue of his eligibility for Chapter 13 relief. 2 Bkr. L.Ed. § 11:24, at 23 (1982).

The Code has expanded access to Chapter 13 relief. In one case, the debtor's sole source of income at the time of filing of the petition was unemployment income. Shortly after filing his benefits terminated. He claimed an ability to earn income by doing odd jobs and "junkin". There the court found the debtor eligible for Chapter 13 relief due to the fact that "his skills are sufficient, his motivation is seemingly adequate and the opportunities are apparently available for [the debtor] to earn some income . . .". *In re Cole,* 3 B.R. 346, 349, 6 B.C.D. 216, B.L.D. ¶ 67407 (Bkrtcy.S.D.W. Va.1980).

■ The next contention of GMAC is that the plan was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3). At least two elements of good faith are honesty of purpose and full disclosure of relevant facts. That is to say, what are the debtor's assets, liabilities and income. 3 Norton Bkr.L. & Prac. 77.06, at pp. 6–7 (1982). The bottom line is whether the debtor proposed a plan he reasonably believes he can carry out. 5 Collier on Bankruptcy ¶ 1325.01, at 1325–8 (15th Ed. 1982).

GMAC argues that the facts show bad faith. Mr. Overstreet contracted with GMAC to pay Two Hundred Seventy-five Dollars and Thirteen Cents ($275.13) per month on the note. The debtor failed to pay the installments for the months of April, May and June of 1982. Now the debtor proposes in his plan to pay Three Hundred Two Dollars and Six Cents ($302.06) per month. GMAC asks how can a debtor be in good faith when he proposes to pay out of unemployment income a larger monthly installment than what the original note called for.

Per month the debtor receives Seven Hundred Ninety-three Dollars ($793.00) as income. He has no other dependents besides his wife. He does not pay alimony and GMAC is the only creditor. His budget estimates monthly living expenses of Four Hundred Seventy-eight Dollars ($478.00). Out of his income remains Three Hundred Fifteen Dollars ($315.00) with which to make his payments into the plan. The

budget appears to be reasonable. Although it is tight it is not impossible. The budget exhibits the good faith of Mr. Overstreet.

The plan is a reorganization of the debtor's assets and liabilities. It is an attempt to inject order and discipline into the debtor's financial affairs. The fact that the payments into the plan exceed payments on the note by Twenty-six Dollars and Ninety-three Cents ($26.93) does not in and of itself show the debtor to be in bad faith. The fact that the debtor has missed three payments on the note is not sufficient evidence of bad faith.

■ Lastly, GMAC argues that the "cram-down" provisions found at 11 U.S.C. 1325(a)(5)(B) cannot be used by the debtor. Those provisions state:

"§ 1325. Confirmation of plan.

"(a) The court shall confirm a plan if—

* * * * * *

"(5) with respect to each allowed secured claim provided for by the plan—

* * * * * *

"(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

"(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;".

GMAC does retain the "lien securing such claim" as required in (B)(i), but section (B)(ii) is not satisfied in the plan. To invoke "cram-down", the creditor is to receive the value of his claim as of the effective date of the plan. This language contemplates the time value of money. While being paid over time the creditor's money is being used and the asset securing his claim is depreciating. The creditor is entitled to some interest rate that will make the deferred payments equal to the present value of his allowed claim. Customarily, this court uses the interest rate found in the contract between the parties.

The alternative to deferred payments is found at 11 U.S.C. § 1325(a)(5)(C). The

debtor may simply return the asset which secures the claim to the creditor. The claim is then satisfied. It is unacceptable that a creditor on the one hand will receive his claim in full in the form of the returned asset. On the other hand, in the case of deferred payments without any interest, the creditor receives only a fraction of his claim. *In re Miller,* 13 B.R. 110 (Bkrtcy.S. D.Ind.1981). Another court called the deferred payments under the plan an involuntary loan. *In re Cooper,* 11 B.R. 391, 7 B.C.D. 854, (Bkrtcy.N.D.Ga.1981). The interest charged to the debtor is not to generate profit for the creditor but is to "protect the secured creditor from loss caused by the allowed secured claim being paid over a period of time". *In re Cooper,* 7 B.R. 537, 542, 7 B.C.D. 24 (Bkrtcy.N.D.Ga.1980).

There is no allowance for interest in Mr. Overstreet's plan. For this reason, the plan submitted by Mr. Overstreet must be denied confirmation.