**In re George SASSOWER, Debtor.**

**Bankruptcy No. 86 B 20500.**

United States Bankruptcy Court, S.D. New York.

Aug. 31, 1987.

Feltman, Karesh, Major & Farbman, New York City, for Lee Feltman.

Kreindler & Relkin, P.C., New York City, for creditors Jerome H. Barr and Citibank, N.A. and pro se.

George Sassower, pro se., White Plains, N.Y.

Jeffrey L. Sapir, Hartsdale, N.Y., trustee.

### DECISION ON MOTION FOR AN ORDER DISMISSING CHAPTER 13 PROCEEDING

HOWARD SCHWARTZBERG, Bankruptcy Judge.

A motion has been made by the law firm of Feltman, Karesh, Major & Farbman, Esqs., creditors of the debtor, George Sassower, to reconvert this case from Chapter 13 to Chapter 7 under the Bankruptcy Code following the debtor's conversion of his voluntary Chapter 7 case to Chapter 13. The motion is bottomed on the ground that the debtor does not qualify as a debtor under Chapter 13 because he does not have regular income and that he owed, as of the date of his Chapter 7 petition, non-contingent, liquidated, unsecured debts of more than $100,000.

### FINDINGS OF FACT

1. The debtor, George Sassower, filed his voluntary Chapter 7 petition with this court on October 27, 1986. The debtor filed his Chapter 7 petition after experiencing a series of downgrading events. He was disbarred as an attorney at law by the New York State courts and by the United States District Court for the Southern District of New York. He had been divorced and dispossessed from his former marital home and he had been incarcerated for criminal contempt of court for disobeying injunction orders with respect to commencing and continuing litigation involving the dissolution of a company known as Puccini Clothes, Ltd.

2. The Second Circuit Court of Appeals recently reversed a Southern District Court order which released the debtor from incarceration. The debtor had argued that he could not be convicted for criminal contempt by the New York Supreme Court pursuant to N.Y.Jud.L. § 751 when he failed to appear before the state court referee on the ground that the referee was disqualified from adjudicating the contempt proceeding.

3. The facts preceding the debtor's commencement of his voluntary Chapter 7 case

were stated by Circuit Court Judge Pratt as follows:

Briefly, Sassower was the attorney for Hyman Raffe, a disgruntled shareholder of Puccini Clothes, Ltd. ("Puccini"), a New York corporation dissolved and placed in receivership by the New York Supreme Court. 619 F.Supp. [891] at 892. Despite court orders disqualifying him from representing Raffe and enjoining him from filing Puccinni-related [sic] litigation, *id.* at 894–95, Sassower has bombarded both the state and federal courts with numerous motions (over 300), law suits (35), and Article 78 proceedings (40) directed against the receiver and his law firm, the attorneys for the other Puccini shareholders, various members of the judiciary, court appointed referees, and the New York State Attorney General. Brief of appellant Lee Feltman, Esq., as receiver for Puccini Clothes, Ltd. at 2–3. *See* 619 F.Supp. at 894.

Prior to the criminal contempt proceedings leading to this habeas corpus proceeding, Sassower had been held in criminal contempt four times and in civil contempt twice for violating state and federal orders enjoining him from filing actions related to the judicial dissolution of Puccini, and for disobeying a court order to appear at a deposition. *See, e.g. Raffe v. Riccobono*, No. 9522/85, *slip op.* at 6–7 (Sup.Ct.N.Y.Co. July 1, 1985), *aff'd*, 113 A.D.2d 1038, 493 N.Y.S.2d 70 (1st Dep't), *appeal dismissed*, 66 N.Y.2d 915, 498 N.Y.S.2d 1027 [489 N.E.2d 773] (1985); *Raffe v. Citibank, N.A.*, 84 Civ. 305 (Nickerson, J.) (E.D.N.Y. June 7, 1985), *aff'd*, 755 F.2d 914 (2d Cir.1985). As a result of these convictions and based on a finding that he had engaged in "frivolous and vexatious litigation * * for the purpose of harassing, threatening, coercing and maliciously injuring those made subject to it," Sassower has now been disbarred. *In re Sassower*, N.Y.L.J., Feb. 27, 1987, at 36, col. 3 (2d Dep't Feb. 23, 1987) (per curiam). The New York appellate court also found that Sassower engaged in professional misconduct that obstructed justice and damaged his client by continuing to liti-

gate after he was disqualified. *Id.* at 36, col. 3.

*Sassower v. The Sheriff of Westchester County*, 824 F.2d 184, 186 (2d Cir.1987).

4. The Chapter 7 trustee in bankruptcy and several creditors filed objections to the debtor's discharge on various grounds, including his alleged failure to produce recorded information including books, documents, records and papers from which the debtor's financial condition or business transactions might be ascertained. The hearing on this objection continued for five trial days, the last being July 21, 1987. The parties were given an opportunity to submit briefs, the last date being set as August 25, 1987 for reply briefs.

5. On August 10, 1987, the debtor exercised his right pursuant to 11 U.S.C. § 706(a) and converted his Chapter 7 case to a case under Chapter 13 of the Code, thereby halting the discharge objection in the Chapter 7 case.

6. The debtor testified at the hearing on the motion to reconvert this case to Chapter 13 that he did have some income since the filing of his Chapter 7 petition. Although he stated in the Chapter 7 case that he earned no income during the last two years, and therefore filed no income tax returns for the years 1985 and 1986, he did earn approximately $200 from his daughter when he recently lugged some of her business merchandise to the Omni Hotel in New York City for a fashion show. He also testified that he expected to manage his daughter's handbag business, Carey Adima, Inc., during her pregnancy and that she would pay him for this work up to $750 per week. He also testified that he had applied for Social Security benefits on the basis of the fact that he is sixty-two years of age and that the benefits would be retroactive to his sixty-second birthday.

7. The debtor further testified that he received financial support from his mother and children. He said that he is planning to write and publish a book entitled "Judicial Inferno" which deals with the subject of judicial corruption. Presumably this book is based on the numerous lawsuits which the debtor had filed against Federal

and State Judges, the United States Attorney and the Attorney General of the State of New York with respect to the Puccini Clothes liquidation and the various criminal contempt rulings in connection with this litigation, including his incarcerations for criminal and civil contempt. Although he does not yet have a publisher for this book, the debtor said that his daughters and relatives are apparently willing to finance its publication. The debtor also testified that some of his former clients are willing to give him a job, including employment with an architectural firm called Donald C. Smith & Co. and an educational publications business entitled Educational Records, Inc.

8. The debtor has established that he has been able to obtain sums of money from his family to support his needs. However, there is no proof that the debtor will receive sufficiently stable and regular income from any identifiable source to enable him to make payments under a Chapter 13 plan. His reference to Social Security payments is premature in that he does not now receive Social Security payments nor is there any evidence that he has established his right to receive such payments in the future. The debtor is a disbarred lawyer with no regular employment and no regular source of income. His track record as to income is not bright; admittedly he received no income during the past two years. There is little basis for his creditors to expect that either now, or in the forseeable future, the debtor will obtain or reveal a regular source of stable income which could be identified as the source for funding a Chapter 13 plan.

9. Indeed, by affidavit sworn to on June 6, 1987, the debtor requested leave to proceed in *forma pauperis* and swore that "because of my poverty I am unable to pay the costs of said proceeding or to give security therefore ...". Manifestly, if the debtor is unable to pay the costs of his bankruptcy case, he certainly is in no position to fund a Chapter 13 plan.

## DISCUSSION

In order to qualify for Chapter 13, a debtor must satisfy the requirement of 11 U.S.C. § 109(e) that he be "an individual with regular income." This term is defined in 11 U.S.C. § 101(29) to mean an;

individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under Chapter 13 of this title, other than a stockholder or a commodity broker;

■ In determining whether or not a debtor has regular income, the courts need not look solely to wages because the legislative history indicates that investments, pensions, Social Security or welfare must also be considered. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 321 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Thus, Social Security payments have been treated as regular income. *Hildebrand v. The Social Security Administration (In re Buren)*, 725 F.2d 1080 (6th Cir.1984), *cert. denied* 469 U.S. 818, 105 S.Ct. 87, 83 L.Ed.2d 34 (1984). Similarly, Welfare benefits qualify as regular income for purposes of Chapter 13. *Bibb County Department of Family & Children Services v. Hope (In re Hammonds)*, 729 F.2d 1391 (11th Cir.1984). Unemployment benefits will also qualify as regular income. *In re Overstreet*, 23 B.R. 712 (Bankr.W.D.La. 1982). It has been held that in determining a debtor's ability to establish a regular income, courts need not look solely at the time when the petition was filed, but may look beyond the petition date if such time is more favorable to the debtor. *In re Tucker*, 34 B.R. 257 (Bankr.W.D.Okl.1983); *In re Bradley*, 18 B.R. 105 (Bankr.D.Vt.1982); *In re Moore*, 17 B.R. 551 (Bankr.M.D.Fla. 1982).

In considering whether or not a debtor has produced evidence of sufficiently stable regular income to fund a Chapter 13 plan, the courts have construed this requirement liberally, but have not considered high hopes for, and expectations of, obtaining prospective employment or income as a substitute for the existence of stable income.

It is incumbent upon a Chapter 13 debtor to sufficiently demonstrate an

ability to fund the plan from sources which are stable and regular.

*In re Tucker,* 34 B.R. at 262.

 If a debtor does not produce credible evidence of the existence of a regular income, the debtor does not qualify for Chapter 13 relief under 11 U.S.C. § 109(e). *In re Wilhelm,* 6 B.R. 905, 908 (Bankr.E.D. N.Y.1980). There must be some factual basis for the court to determine the regularity and stability of the debtor's income. *In re Mozer,* 1 B.R. 350, 352 (Bankr.D.Colo. 1979).

■ The debtor in this case has failed to produce any evidence of a stable income or that his future prospects for achieving a regular and stable income are good. Indeed, his past history which reflects a disbarment as an attorney, incarcerations for criminal and civil contempt and no visible income during the past two years does not bode well for the future:

> In the instant case, Troyer is presently unemployed and has no prospects of employment. He has no present income from any source. Moreover, it is likely that he will receive jail sentences on the violations of state and federal law to which he has agreed to plead guilty. When he would be released from jail is a matter of complete speculation at this time. As such, whether this Court looks solely to the date of the filing of the petition or looks into the future, Troyer is not an individual with income sufficiently stable and regular to make Chapter 13 payments.

*In re Troyer,* 24 B.R. 727, 730 (Bankr.N.D. Oh.1982). The debtor in this case has not produced any credible evidence to form a factual basis for concluding that the debtor has a regular and stable source of income within the meaning of 11 U.S.C. §§ 109(e) and 101(29).

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. The debtor has failed to establish credible evidence of the existence of a regular and stable income within the meaning of 11 U.S.C. §§ 109(e) and 101(29).

3. The motion to reconvert this Chapter 13 case to a case under Chapter 7 is granted.

SUBMIT ORDER on notice.